UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE W. CARLISLE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:06-CV-677 CAS |
| ) | |
| CITIMORTGAGE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion to Compel Arbitration. Plaintiff has filed an opposition to the motion and defendant has replied. For the following reasons, the Court will grant defendant's motion to compel arbitration.

**Background**.

Plaintiff alleges that on or about January 27, 2005, he applied but was not hired for seven separate positions at "City Group," 1000 Technology Drive, O'Fallon, Missouri. Six of the seven jobs for which plaintiff applied were positions of employment with CitiMortgage, Inc. ("CitiMortgage").[1] Plaintiff is a forty-year-old African American man, and he states that he was discriminated against on the basis of his age, race, and sex. He states that the applicants hired for the various positions were female, younger than forty, and not members of a minority race. Plaintiff

---

[1] After accepting service on behalf of Citigroup, Inc., defendant determined that six of the employment positions were with CitiMortgage. The seventh position was with an entity called Citigroup Technology, Inc. The Court granted defendant's motion to substitute CitiMortgage as the proper party defendant, and instructed defendant that if he wished to maintain his claim against Citigroup Technology, Inc. to file a motion to join that entity as a defendant.

seeks compensatory and punitive damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

In September 2005, approximately nine months after the alleged discriminatory acts, plaintiff was hired by CitiMortgage.[2] On September 19, 2005, plaintiff acknowledged receiving a copy of CitiMortgage's Employee Handbook (the "Employee Handbook"), and signed the receipt form, which stated that he would comply with all the policies and procedures of the company. As relevant here, the Employee Handbook contains an arbitration policy stating that arbitration is the "required and exclusive forum for the resolution of all employment disputes based on legally protected rights . . . that may arise between an employee or former employee and [CitiMortgage]." See Schwartz Aff., Ex. B, Employee Handbook at 35. Plaintiff admits that he signed the receipt form, acknowledging his receipt of a copy of the Employee Handbook.

**Standard**.

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C.§§ 1-16 (1994), "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements

---

[2] In his opposition to defendant's motion to compel arbitration, plaintiff denies that he worked for CitiMortgage, stating that the only company he worked for was CitiFlex. He describes CitiFlex as a contract recruiter that hires temporary, "non-employee" workers. Plaintiff has offered no independent evidence to substantiate his claim that his employment relationship was with CitiFlex.

In support of its motion to compel arbitration, defendant filed an affidavit of Jennifer Schwartz, Senior Human Resources Generalist for CitiMortgage. Ms. Schwartz states that plaintiff was employed by CitiMortgage, a business within a larger business group, the U.S. Consumer Group of Citigroup, Inc. To further corroborate this statement, Ms. Schwartz attaches to her affidavit portions of U.S. Consumer Group's 2004 Employee Handbook. The receipt form is signed by plaintiff, and states, "[I]n consideration of my continued at-will employment by the Company, I will comply with it and all of the Policies and Procedures of the Company." The header on the receipt form states "U.S. Consumer Group 2004 Employee Handbook."

The evidence in the record, particularly the sworn affidavit of Ms. Schwartz stating that plaintiff was employed by CitiMortgage, contradicts plaintiff's statement. Based on the record, the Court finds that plaintiff was an employee of CitiMortgage.

2

upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA declares that written agreements to resolve disputes through arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.§ 2 (1994). The effect of the FAA was to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). In Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), the Supreme Court held that the FAA's provisions apply to arbitration agreements covering employment-related claims. Id. at 1311.

In determining whether to compel arbitration, a court "must determine simply whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement." Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001); see also Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004) (same). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000) (brackets in original; citing Gilmer, 500 U.S. at 26 and quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985)). Further, "[t]he Supreme Court has made it clear that '[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Ackerberg v. Johnson, 892 F.2d 1328, 1332 (8th Cir. 1989) (quoting Moses H. Cone, 460 U.S. at 24-25). Accordingly, the Court will review defendant's motion in light of "liberal federal policy favoring arbitration agreements." Gilmer, 500 U.S. at 25 (quoting Moses H. Cone, 460 U.S. at 24).

**Discussion**.

The Court must first determine whether the agreement to arbitrate is subject to the FAA. In passing the FAA, Congress mandated the enforcement of arbitration provisions and declared a strong national policy in favor of arbitration. See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). "From this strong policy flows a 'broad principle of enforceability' of arbitration provisions." Dobbins v. Hawk's Enters., 198 F.3d 715, 717 (8th Cir. 1999) (quoting Southland, 465 U.S. at 11). The FAA's provisions apply to arbitration agreements covering employment-related claims. See Gannon 262 F.3d at 679-80 (holding FAA applies to arbitration agreements relating to employment claims) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)). Therefore, the arbitration provision in the instant case is subject to the FAA.

Next, the Court must determine whether the parties have entered into a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement. See Faber, 367 F.3d at 1052. The arbitration policy in CitiMortgage's employment handbook was issued to plaintiff when he began his employment. On September 19, 2005, plaintiff agreed to be bound by this arbitration policy by signing the receipt form. This form reminds the employee that he agrees to "submit employment-related disputes" to binding arbitration and references the pages in the handbook on which the arbitration policy is located.

> I understand that this *Handbook* contains a policy that requires me to submit employment-related disputes to binding arbitration (see page 35). I have read that policy carefully. I also understand that no provision in this *Handbook* or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

(Schwartz Aff., Ex. A)

It is uncontroverted that plaintiff agreed in writing that he would abide by all rules, policies and procedures in the Employee Handbook, which includes an arbitration provision. Whether the arbitration agreement is valid is a matter of state contract law. Faber, 367 F.3d at 1052. Under Missouri law, "[t]he primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001) (quoting Speedie Food Mart, Inc. v. Taylor, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991)). Federal courts in Missouri have enforced the arbitration provision at issue here in other employment disputes. See, e.g., Bobby Tripp v. Citicorp Credit Servs., Inc., 04-0497-CV-W-FJG (W.D. Mo. May 24, 2005); Albert Mellon IV v. Citicorp Credit Servs., Inc., 04-6078-CV-SJ-SOW (W.D. Mo. Nov. 9, 2004). Under the facts of this case viewed in light of applicable Missouri law, the Court concludes that the arbitration agreement is valid.

The Court also finds that plaintiff's claims fall within the scope of the arbitration agreement, which specifically covers "all employment disputes based on legally protected rights (i.e., statutory, contractual, or common-law rights) that may arise between an employee or former employee and [CitiMortgage]." In reviewing this language, the Court is guided by the principal that arbitration agreements are favored and are to be broadly construed with doubts resolved in favor of coverage. The Supreme Court has held that arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986); see also Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001) (instructing courts to resolve "any doubts concerning the scope of arbitrable issues in favor of arbitration"). The fact that plaintiff's employment-related dispute arose before he signed the arbitration agreement does

not alter this finding. Courts have construed arbitration agreements to include claims that arose before the execution of the agreement. See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 332 (10th Cir. 1993); Mail-Well Envelope v. International Ass'n of Machinists and Aerospace Workers, 916 F.2d 344, 346-37 (6th Cir. 1990).

In Zink v. Merrill Lynch, 13 F.3d at 332, plaintiff argued that the arbitration clause did not cover his dispute because the dispute arose out of bond purchases occurring before he signed the arbitration agreement. The arbitration agreement read: "[A]ny controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration." The court found this language broad enough to cover the dispute despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement. See Zink, 13 F.3d at 332. In the instant case, the language in the arbitration agreement is substantially similar. The Court finds that the arbitration agreement signed by plaintiff covers "all employment disputes," including plaintiff's disputes over not being hired for employment with CitiMortgage in January 2005.

Based on the foregoing, the Court concludes that plaintiff executed a valid agreement to arbitrate and that his claims of unlawful discrimination based on age, sex, and race in violation of Title VII fall within the scope of the agreement.

**Conclusion**.

For the foregoing reasons, the Court concludes that plaintiff executed a valid agreement to arbitrate and that his claims of unlawful discrimination based on age, race, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. fall within the scope of the agreement. Because all of the claims in this action against defendant CitiMortgage are subject to arbitration, defendant's motion to compel arbitration should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel arbitration is **GRANTED**.

[Doc. 13]

　　　　　　　　　　　　　　　　　　　　　　　*Charles A. Shaw*
　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**CHARLES A. SHAW**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

Dated this 25th day of May, 2007.